Jack O. CHERTKOF, Trustee

v.

**MAYOR & CITY COUNCIL OF BALTI-MORE, a Municipal Corporation and Anchor–Hocking Corporation.**

Civ. A. No. M–79–2258.

United States District Court,
D. Maryland.

Sept. 19, 1980.

Arnold M. Weiner and Richard V. Falcon, Baltimore, Md. (Melnicove, Kaufman & Weiner, P. A., Baltimore, Md.), for plaintiff.

Benjamin L. Brown, City Sol. and Richard K. Jacobsen, Chief Sol., Baltimore, Md., for defendant, Mayor & City Council of Baltimore.

John Henry Lewin, Jr. and Sally Spencer Lazzara, Baltimore, Md. (Venable, Baetjer & Howard, Baltimore, Md.), for defendant, Anchor–Hocking Corp.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Plaintiff Chertkof, trustee of a trust owning an eleven (11) acre tract of land located in South Baltimore, alleges that the Mayor & City Council of Baltimore (City) and the Anchor–Hocking Corporation (Anchor–Hocking) have conspired to deprive the trust of its property for the private use of Anchor–Hocking. The complaint asserts that Anchor–Hocking, a Delaware glass manufacturer doing business in South Baltimore as the Carr–Lowrey Glass Company, sought to acquire the adjacent Chertkof property to enable it to expand its industrial operations. After unsuccessful negotiations with plaintiff in 1977 to purchase the land, Anchor–Hocking allegedly conspired with Baltimore officials to have the City designate the land as part of the Middle Branch Urban Renewal Project. The al-

leged conspiracy contemplated that the City would then obtain the land through purchase or condemnation and convey it to Anchor–Hocking.

On July 27, 1979, the City Council passed Bill No. 2515, designating the Chertkof property as part of the Middle Branch Urban Renewal Project and ordering condemnation should the City be unable to purchase the property. On October 22, 1979, a City appraiser visited plaintiff to initiate an appraisal, which plaintiff contends indicated that a condemnation suit was imminent. (Complaint, Paper No. 1, at 2–5; Plaintiff's Response to Motions to Dismiss, Paper No. 15, at 4–11).

Before a condemnation suit could be filed in state court, plaintiff brought this action, basing jurisdiction on 28 U.S.C. §§ 1331, 1343, alleging that defendants' actions violated the Due Process Clause of the Fourteenth Amendment and seeking redress under 42 U.S.C. § 1983 for alleged deprivations of federal rights under color of state law. Plaintiff also invoked this court's pendent jurisdiction in connection with a civil conspiracy claim and alleged violations of Article II of the Baltimore City Charter.[1] Plaintiff seeks injunctive and declaratory relief,[2] compensatory and punitive damages, and attorneys' fees and costs.

By separate motions, defendants have moved to dismiss on two grounds: (1) this court lacks subject matter jurisdiction, and (2) the complaint fails to state a claim for which relief can be granted. Rule 12(b)(1) and (6), F.R.Civ.P. Alternatively, defendants contend that this court should abstain because the case presents questions of state law whose resolution by the state courts could avoid the need for federal adjudication.

### I. Subject Matter Jurisdiction

Defendants' contention that this court lacks jurisdiction over the subject matter of

---

1. The complaint also alleges violations of the Fifth Amendment Due Process Clause, the Fourteenth Amendment Equal Protection Clause, Article 23 of the Maryland Declaration of Rights, and other acts in contravention of "the statutes and laws of Maryland."

2. The complaint did not expressly request a declaratory judgment. Plaintiff's Memorandum in Response, however, suggests that its request for general equitable relief implicitly comprehends declaratory relief. See 28 U.S.C. §§ 2201–2202 (Paper No. 15, at 5 n.2, 14–15).

the action is essentially a ripeness argument. The major premise is that the mere inclusion of land within an urban renewal area does not amount to an exercise of the City's eminent domain powers. Therefore, they argue, since there has been no "taking," the suit is premature and plaintiff's claims are not ripe for adjudication as required by Article III of the United States Constitution. (Anchor–Hocking Memorandum, Paper No. 8, at 3–5; City Memorandum, Paper No. 6, at 2, 4). In response, plaintiff asserts that the prerequisites to a condemnation suit are virtually complete and the institution of such a suit is imminent. Thus, the controversy is sufficiently ripe for adjudication because the actual "taking" is impending sufficiently to warrant federal relief. (Plaintiff's Memorandum, Paper No. 8, at 14–20).

The classic test of justiciability was set forth by Mr. Chief Justice Hughes in *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937):

"A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. *United States v. Alaska S. S. Co.,* 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *South Spring Gold Co. v. Amador Gold Co.,* 145 U.S. 300, 301, 12 S.Ct. 921, 36 L.Ed. 712; *Fairchild v. Hughes,* 258 U.S. 126, 129, 42 S.Ct. 274, 275, 66 L.Ed. 499; *Massachusetts v. Mellon,* 262 U.S. 447, 487, 488, 43 S.Ct. 597, 67 L.Ed. 1078. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising that the law would be upon a hypothetical state of facts. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award

of process or the payment of damages. *Nashville, C. & St. L. Ry. Co. v. Wallace, supra,* 588 U.S. 249, p. 263, 53 S.Ct. 345, 77 L.Ed. 730; *Tutun v. United States,* 270 U.S. 568, 576, 577, 46 S.Ct. 425, 426, 70 L.Ed. 738; *Fidelity National Bank v. Swope,* 274 U.S. 123, 132, 47 S.Ct. 511, 514, 71 L.Ed. 959; *Old Colony Trust Co. v. Commissioner, supra,* p. 725. And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required. *Nashville, C. & St. L. Ry. Co. v. Wallace, supra,* 288 U.S. p. 264, 53 S.Ct. 345."

*Id.* at 240–41, 57 S.Ct. at 464. Although the *Haworth* test has been described as "cryptic," C. A. Wright, *Law of Federal Courts* 38 (3d ed.1976), and "imprecise," *Public Service Comn. v. Wycoff Co.,* 344 U.S. 237, 242, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1965), it nevertheless provides a guidepost for our immediate inquiry.

■ Generally, a case is ripe for adjudication when objective evidence of threatened state action establishes that the need to protect a plaintiff's rights outweighs the disadvantages of adjudication. *See* Brilmayer, *The Jurisprudence of Article III: Perspectives on the "Case or Controversy" Requirement,* 93 Harv.L.Rev. 297, 299 (1979). In *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), for example, the state attorney general's threatened enforcement of Minnesota's newly established railroad rates prompted railroad stockholders to sue for an injunction before the allegedly confiscatory rates could go into effect. In upholding the issuance of the injunction the Supreme Court stated:

"We have, therefore, *upon this record* the case of an unconstitutional act of the state legislature and an *intention* by the Attorney General of the State to endeavor to enforce its provisions, to the injury of the company . . . . ."

*Id.* at 149, 28 S.Ct. at 449.

"The various authorities we have referred to furnish ample justification for the assertion that individuals who, as of-

ficers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who *threaten and are about to commence proceedings*, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."

*Id.* at 155–56, 28 S.Ct. at 452. (emphasis supplied). With respect to the possible disadvantages of adjudication, the Court wrote:

"Finally it is objected that the necessary result of upholding this suit in the Circuit Court will be to draw to the lower Federal courts a great flood of litigation of this character, where one Federal judge would have it in his power to enjoin proceedings by state officials to enforce the legislative acts of the State, either by criminal or civil actions. To this it may be answered, in the first place, that no injunction ought to be granted unless in a case reasonably free from doubt. We think such rule is, and will be, followed by all the judges of the Federal courts."

*Id.* at 166–67, 28 S.Ct. at 456–57.

Thus, in *Ex Parte Young, supra,* the evident threat of state action demonstrated that the need to protect plaintiff's rights outweighed the potential costs of federal adjudication. Similarly, in *Risty v. Chicago, Rock Island & Pacific Ry. Co.,* 270 U.S. 378, 46 S.Ct. 236, 70 L.Ed. 641 (1926), the Court held that suits to enjoin a county's proposed assessment of lands, on the basis of alleged special benefits, was ripe for adjudication. In *Risty, supra,* there was evidence that county officials had already completed the improvements upon which the special benefit assessments were to be based. Because the next step "would have been the assessment of costs of construction . . . the threatened injury was imminent and the suits were not premature." 270 U.S. at 387–88, 46 S.Ct. at 240.

■ In the instant case, plaintiff seeks, in part, injunctive and declaratory relief, pursuant to 42 U.S.C. § 1983, in connection with its claim that defendants have violated property rights guaranteed by the Fourteenth Amendment. That 42 U.S.C. § 1983 protects such property rights is beyond dispute. *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). It is also settled that 42 U.S.C. § 1983 is an expressly authorized exception to 28 U.S.C. § 2283, the federal anti–injunction statute. *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), and an appropriate vehicle for obtaining declaratory relief. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

■ Assuming the truth of plaintiff's factual allegations, as the court must for the purpose of defendants' motions, objective evidence does indicate a real threat of condemnation. City officials have met repeatedly with Anchor–Hocking representatives, and have circulated memoranda evidencing their intent to acquire plaintiff's property in order to convey it to Anchor–Hocking. Furthermore, on July 27, 1979, City officials obtained the passage of Bill No. 2515, which included plaintiff's property in the Middle Branch Urban Renewal Park Project. This ordinance directs the Real Estate Acquisition Division to acquire plaintiff's property by having the City Solicitor institute a condemnation suit if plaintiff will not sell. Moreover, according to the complaint, the City has evidenced an intent to obtain plaintiff's property by "quick–take" procedures, enabling it to assume title and rights of possession as soon as the condemnation suit is filed. Further, on October 22, 1979, a City appraiser visited plaintiff's property, which plaintiff asserts does not occur unless condemnation proceedings are imminent.

Although inclusion of plaintiff's property in an area intended for condemnation may not itself constitute a "taking," it does tend to impair substantially the uses of plaintiff's property, as well as reduce its value and marketability. Further, as one Maryland practitioner has observed:

"There are other circumstances working against the owner of property, espe-

cially commercial property, subject to condemnation which expose him to damages for which he is not compensated under present law. One of these is the effect which the announcement of the project, and of the area in which it will be constructed, has on property within the area. While property surrounding the area may increase in value as a result of the announcement, there is obviously little or no market for the doomed property that lies within it."

Ghinger, *A Contemporary Appraisal of Condemnation in Maryland*, 30 Md.L.Rev. 301, 326 (1970). Consequently, the objective evidence tends to support a need to protect plaintiff's rights.

The evidence does not, however, reveal significant disadvantages to the exercise of jurisdiction at this time. Since the City has already completed its decision making process respecting the lands to be included in the renewal area, there is little danger of federal judicial intervention in the local planning process. Furthermore, this case does not involve a law of general applicability, so the risks of a flood of suits are minimal. *See Ex Parte Young, supra; United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Finally, awaiting the filing of a condemnation suit would not add significantly to the availability of operative facts necessary for determination of the parties' dispute. *Compare Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Nevertheless, at oral argument, defendants continued to urge this court to await the filing of a condemnation suit because plaintiff would then have the opportunity to raise all of its federal claims in the state proceeding. In so urging, defendants would have this court impose unsupportable limitations upon the parameters of 42 U.S.C. § 1983.

In the recent case of *Supreme Court of Virginia v. Consumers Union*, —— U.S. ——, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), the Supreme Court held that the Virginia Supreme Court, as well as its Chief Justice in his official capacity, could properly be sued under 42 U.S.C. § 1983 to prevent the enforcement of unconstitutional disciplinary rules. Rejecting the argument that a section 1983 action was unnecessary because the plaintiff could raise its constitutional defenses in a state court action, Mr. Justice White commented:

"If prosecutors and law enforcement personnel cannot be proceeded against for declaratory relief, putative plaintiffs would have to await the institution of state–court proceedings against them in order to assert their federal claims. This is not the way the law has developed and because of its own inherent and statutory enforcement powers, immunity does not shield the Virginia Court and its Chief Justice from suit in this case."

100 S.Ct. at 1977. The Court also reaffirmed the rule that the existence of enforcement authority, together with the intention of the local or state officials to exercise that authority, presents "a sufficiently concrete dispute" meeting the "case or controversy" requirement for the exercise of federal jurisdiction. 100 S.Ct. at 1977 n.15. *See Steffel v. Thompson*, 415 U.S. at 459–60, 94 S.Ct. 1209, 1215–16; *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *A. S. Abell Co. v. Chell*, 412 F.2d 712, 719 (4th Cir.1969). Thus, the court concludes that plaintiff has established the existence of a substantial controversy between parties having adverse legal interests, under circumstances evidencing a demonstrable need for federal protection.

## II. *Rule 12(b)(2)*

Defendants' second contention is that because no condemnation suit has been instituted, there has been no "taking" within the meaning of the Fourteenth Amendment Due Process Clause. Therefore, they argue, plaintiff has not suffered an interference with its property rights sufficient to claim a constitutional violation. (Anchor–Hocking Memorandum, Paper No. 8, at 5–8; City Memorandum, Paper No. 6, at 4).

Plaintiff, however, asserts that a claim has been stated because the facts alleged

would, if proved, establish: (1) that defendants, under color of law, have participated in a conspiracy, and taken affirmative steps in furtherance thereof, to use the City's condemnation power to deprive plaintiff of the trust property for the economic benefit of Anchor–Hocking; and (2) that plaintiff has and will continue to suffer economic injury by virtue of defendants' acts. (Complaint, Paper No. 15, at 11–14).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. Yet, it is well established that the "complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–106, 2 L.Ed.2d 80 (1957). *See Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865, 870 (4th Cir. 1941). In ruling on a motion to dismiss, the court must consider as true all of the properly pleaded allegations contained in the complaint. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). Moreover, the allegations will be construed liberally in favor of the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and the court must disregard the contrary allegations of the opposing party. *A. S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).

Assuming the truth of plaintiff's allegations, the court concludes that a federal claim has been stated. It is beyond dispute that a state or local government may not take private property for nonpublic purposes. *See, e. g., Madisonville Tractor Co. v. Bernard Mining Co.*, 196 U.S. 239, 252–53, 25 S.Ct. 251, 256, 49 L.Ed. 462 (1905); *Missouri Pacific Ry. Co. v. Nebraska*, 164 U.S. 403, 417, 17 S.Ct. 130, 135, 41 L.Ed. 489 (1896). *See generally* 2A Nichols, *Eminent Domain* § 7.31[1] (1979). Furthermore, allegations in a complaint asserting governmental efforts to that end raise a substantial federal question. *See Mosher v.*

*Phoenix*, 287 U.S. 29, 31–32, 53 S.Ct. 67, 68, 77 L.Ed. 148 (1932); *Cuyahoga Power Co. v. City of Akron*, 240 U.S. 462, 464, 36 S.Ct. 402, 403, 60 L.Ed. 743 (1916); *Rodgers v. Tolsen*, 582 F.2d 315, 318 (4th Cir. 1978).

Here, the complaint alleges that defendants have conspired to "take" plaintiff's land for nonpublic purposes, and that the City has passed an ordinance implementing the plan. While the facts may ultimately show that there has been or will be no unconstitutional "taking" of plaintiff's property, *see, e. g., Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962); *Donohoe Construction Co. v. Montgomery County Council*, 567 F.2d 603, 608 n.13 (4th Cir. 1977); *Kent Island Joint Venture v. Smith*, 452 F.Supp. 455, 460 (D.Md.1978), this court may not dismiss for failure to state a claim simply because plaintiff has not yet proved his case.

The court also concludes that plaintiff has stated a claim under 42 U.S.C. § 1983 against both the City and the corporate defendant. Municipalities are "persons" within the meaning of the statute, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611 (1978), and may be held liable for damages for constitutional violations flowing from their legislative activities, even in the absence of bad faith. *Owen v. City of Independence*, 445 U.S. 622, 647, 100 S.Ct. 1398, 1415–16, 63 L.Ed.2d 673 (1980). Additionally, it is settled that private persons acting in concert with government officials subject themselves to section 1983's reach. *Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966).

A federal court has discretion to exercise pendent jurisdiction over a claim not otherwise cognizable in federal court as long as the court has jurisdiction over a federal claim, and the pendent claim derives from the same "common nucleus of operative fact." *United Mine Workers of Ameri-*

*ca v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Since plaintiff's state law claims involve the identical transactions asserted in support of the federal claims, the court will exercise pendent jurisdiction over the nonfederal claims.

### III. *Abstention*

A central aspect of this case involves Bill No. 2515, the ordinance designating plaintiff's property as part of the renewal area and ordering its condemnation if purchase efforts are unsuccessful. In its complaint, plaintiff has alleged that the ordinance violates section 15A of Article II of the Baltimore City Charter. (Complaint, Paper No. 1, at 3, 8). Under that charter provision, the City is prohibited from exercising its condemnation power to acquire property for "the industrial and economic growth of Baltimore City." Plaintiff contends that this restrictive provision was violated because the City intends to condemn its property in order to enable Anchor–Hocking to expand its industrial operations in South Baltimore.

In contrast, the City asserts that the ordinance was passed pursuant to Section 15 of Article II of the Baltimore City Charter. (City Memorandum, Paper No. 6, at 1). Section 15 empowers the City to acquire property by condemnation for "development or redevelopment, including, but not limited to, the comprehensive renovation or rehabilitation thereof." The City maintains that Bill No. 2515 is consistent with this provision because the stated purpose of the Bill was to establish an urban renewal area in order to rehabilitate and encourage recreational development of that part of the City. The language of the Bill, however, does not indicate specifically which part of the City Charter is relied upon for condemnation authority. Rather, the Bill simply states that if the Real Estate Acquisition Division of the Department of the Comptroller "is unable or are unable to agree with the owner or owners on the purchase price for said properties or portions thereof, it or they shall forthwith notify the City Solicitor of Baltimore, who shall thereupon institute in the name of the Mayor and City

Council of Baltimore the necessary legal proceedings to acquire by condemnation the fee simple interest or any lesser interest in and to said properties or portions thereof." (Complaint, Paper No. 1, Exhibit D at 5, lines 15–23).

 The City's power to condemn property is predicated upon Section One, Article X1–B of the Maryland Constitution, which indicates that such property "is hereby declared to be needed or *taken for a public use.*" (emphasis supplied). The State's mandate that property be taken for public uses only is further reflected in Section 2 of Article II of the City Charter. That section authorizes generally the City's purchase or condemnation of property "for any *public use.*" (emphasis supplied).

Defendants contend that the application of the above–mentioned Charter provisions, which have not been interpreted by Maryland state courts, could well be dispositive of plaintiff's claims. Therefore, they argue, this court should abstain to enable the state courts to interpret initially the Charter provisions at issue and avoid the constitutional questions raised in the complaint. Defendants also argue that federal intervention in a local condemnation matter would generate undue federal–state friction, and that questions arising from local land use decisions are matters properly reserved for the state courts. (Anchor–Hocking Memorandum, Paper No. 8, at 10–13; Anchor–Hocking Memorandum, Paper No. 17, at 6–8; City Memorandum, Paper No. 6, at 3–4).

Plaintiff contends, however, that the need to interpret the Charter has been eliminated from the case because the City claims to have relied upon Section 15, rather than Section 15A, for its authority to condemn plaintiff's property. Therefore, plaintiff argues, all that remains is essentially a factual dispute between the parties; that is, whether the City is attempting to condemn plaintiff's property for a nonpublic purpose. (Plaintiff's Memorandum, Paper No. 15, at 33–34). Even assuming the need to apply the Charter provisions, plaintiff asserts that this court should not abstain because the case involves only an in-

significant intrusion into local affairs when compared with the importance of the constitutional rights plaintiff claims have been violated.

Having reviewed the relevant Charter provisions, the court concludes that their application may affect materially the outcome of this litigation, notwithstanding that the broader factual issue is whether the City is attempting to take plaintiff's property for the benefit of a neighboring industrial concern. The court must, therefore, determine whether abstention is appropriate or necessary.

■ It is now well settled that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Moreover, the Supreme Court has warned repeatedly:

> "that because of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in 'special circumstances,' *see Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967), and only upon careful consideration of the facts of each case. *Baggett v. Bullitt,* 377 U.S. 360, 375–379, 84 S.Ct. 1316, 1324–1327, 12 L.Ed.2d 377 (1964); *Railroad Comm'n v. Pullman Co., supra,* 312 U.S. 496 at 500, 61 S.Ct. 643, 85 L.Ed. 971."

*Harris County Commissioners Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975).

As Mr. Justice Brennan explained in *Colorado River Water Conservation District v. United States,* 424 U.S. at 814–17, 96 S.Ct. at 1244–1245, the "special circumstances" under which abstention is appropriate fall into three broad categories: *Pullman*–type abstention, *Burford*–type abstention, and *Younger*–type abstention. Judge Harvey summarized succinctly these categories in *Kent Island Joint Venture v. Smith,* 452 F.Supp. 455 (D.Md.1978), a case involving

claims of a *de facto* taking through local zoning and land use decisions.

> "The three abstention doctrines take their names from the three Supreme Court cases in which the principles were first recognized, *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Abstention under *Pullman* is appropriate to avoid deciding a federal constitutional issue where the case may be disposed of by a decision on questions of state law. *Burford*–type abstention is appropriate to avoid needless state–federal friction caused by federal interference with the administration by the state of its own purely local affairs. Abstention under *Younger* is appropriate where, absent bad faith, harassment or a patently invalid state statute, federal jurisdiction has been invoked to restrain a state civil or criminal law enforcement proceeding. *See generally Fathers United v. Circuit Court of Balto.,* 361 F.Supp. 1080 (D.Md. 1973)."

*Id.* at 461. *See also Highfield Water Co. v. Public Service Commission,* 488 F.Supp. 1176, 1196–99 (D.Md.1980).

■ *Younger*–type abstention is inapplicable here because "there is neither criminal nor civil litigation pending in a state court in which questions sought to be raised in federal litigation by the same parties or those in privity with them are present." *Joseph v. Blair,* 482 F.2d 575, 578 (4th Cir. 1973).

■ *Burford*–type abstention is similarly inappropriate. The ordinance at issue involves neither a complex regulatory scheme, *see Donohoe Construction Co. v. Montgomery County Council,* 567 F.2d 603, 607 n.12 (4th Cir. 1977), nor land use decisions applicable to the public at large. *See Fralin & Waldron, Inc., v. City of Martinsville,* 493 F.2d 481, 482–83 (4th Cir. 1974); *Kent Island Joint Venture v. Smith,* 452 F.Supp. at 461–64. To the contrary, the

evidence of record establishes that the impact of the ordinance falls almost exclusively on the plaintiff. *Compare County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959) *with Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

 The court does conclude, however, that this case involves considerations underlying *Pullman*–type abstention. Although abstention "is not appropriate solely to avoid the decision of difficult state law questions," *Whol v. Keene*, 476 F.2d 171, 174 (4th Cir. 1973), state court interpretation of the City Charter provisions could avoid or modify the federal questions raised by plaintiff, or "at least materially change the nature of the problem." *Harrison v. NAACP*, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959). *See Harris County Commissioners Court v. Moore*, 420 U.S. at 84, 95 S.Ct. at 875; *Lake Carriers Association v. MacMullan*, 406 U.S. 498, 510–11, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972); *Blount v. Mandel*, 400 F.Supp. 1190, 1200–02 (D.Md.1975).

Nevertheless, the court will not dismiss or stay this proceeding while the parties litigate in state court. In the exercise of its discretion, the court probably will certify questions of state law to the Court of Appeals of Maryland pursuant to the Maryland Uniform Certification of Questions of Law Act, § 12–601 *et seq.*, Courts & Judicial Proceedings Article, *Md.Ann.Code* (1980 Repl.Vol.), after further proceedings in this case refine the facts relating to the asserted public benefit of the acquisition by the City of the plaintiff's land. This procedure in *Pullman*–type cases was recently endorsed by the Supreme Court in *Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976). Mr. Justice Blackmun commented on the certification procedure as follows:

> "Finally, we note that the Supreme Judicial Court of Massachusetts has adopted a Rule of Court under which an issue of interpretation of Massachusetts law may be certified directly to that court for prompt resolution. Mass. Rules

of Court, Sup.Jud.Ct.Rule 3:21 (1976). This Court often has remarked that the equitable practice of abstention is limited by considerations of 'the delay and expense to which application of the abstention doctrine inevitably gives rise.' *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, at 509, 92 S.Ct. 1749, 32 L.Ed.2d 257, quoting *England v. Medical Examiners*, 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440, 446 (1964). See *Kusper v. Pontikes*, 414 U.S. 51, at 54, 94 S.Ct. 303, 38 L.Ed.2d 260. As we have also noted, however, the availability of an adequate certification procedure 'does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism.' *Lehman Brothers v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). This Court has utilized certification procedures in the past, as have courts of appeals."

*Id.* at 150–51, 96 S.Ct. at 2868 (footnote omitted).

Considering the evidence of record and the important constitutional questions raised by plaintiff, the court concludes that abstention is inappropriate at this time. The court may, however, certify questions of law to the Court of Appeals of Maryland since interpretation of the City Charter could avoid or modify the federal questions presented.

It is, therefore, this 19th day of September, 1980, by the United States District Court for the District of Maryland, ORDERED:

1. Defendants' motions to dismiss are DENIED.

2. Defendants' motions for abstention are DENIED.

3. The clerk shall transmit a copy of this Memorandum and Order to counsel for the parties.