Mae Elizabeth SIMMONS

v.

Donna SHALALA, Secretary, Health and Human Services.

Civil Action No. WMN–96–1472.

United States District Court,
D. Maryland.

Nov. 27, 1996.

Mae Elizabeth Simmons, pro se.

Allen F. Loucks and Lynne A. Battaglia, Office of the U.S. Attorney for the District of Maryland, and Fred E. Haynes, Washington, DC, for defendant.

### MEMORANDUM

NICKERSON, District Judge.

Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Paper No. 26). The issues have been fully briefed and are ripe for consideration. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted.

1. Plaintiff attached a number of exhibits to her Complaint (Paper No. 1). The first of these exhibits consists of a number of pertinent docu-

## I.  BACKGROUND

Plaintiff, Mae Elizabeth Simmons, has filed a pro se complaint of employment discrimination under Title VII of the Civil Rights Act of 1964, as amended. *See* 42 U.S.C. § 2000e–16(c) (providing for civil action by employees of federal government). Plaintiff is suing Donna Shalala, the Secretary of the Department of Health and Human Services ("HHS"), and two HHS employees, Mary Rose Lynch and Hugh Stamper, alleging that she was discriminated against by HHS because of her race (African–American) and that she was retaliated against by HHS because of the exercise of her rights under Title VII.

Plaintiff began as a federal employee in or about 1973. She was employed as a clerical/administrative staff person at the Alcohol, Drug Abuse, and Mental Health Administration ("ADAMHA") in Rockville, Maryland. In September of 1990, Plaintiff was reassigned to the Division of Extramural Activities ("DEA") of ADAMHA as assistant to Mary Rose Lynch, the administrative officer for DEA, who was in turn supervised by the Director of the Division, Hugh Stamper.

During 1991, Plaintiff used up all of her annual and sick leave and additionally took 214 hours of leave without pay for a total of 510 hours. Paper No. 26 at 5. An ADAMHA Employees Relations Specialist recommended that Lynch place Plaintiff on special leave restriction procedures allegedly to help Plaintiff manage her use of leave. *Id.* Plaintiff received a memorandum outlining these leave restrictions from Lynch. Paper No. 1, ex. 1 (Memorandum of Caution and Leave Restriction).[1] Plaintiff responded to Lynch's memo with a memo which asserted Plaintiff's belief that the leave restrictions were Lynch's way of retaliating against Plaintiff because Plaintiff had accused Lynch of falsifying leave records. *Id.* (February 3, 1992 Memorandum at 3).

On or about March 12, 1992, Plaintiff was issued a notice of proposed suspension for 14 days without pay. *Id.* (Notice of Proposed Suspension). The notice was a five page

ments to this lawsuit which will be identified in parentheses after the citation to Paper No. 1, ex. 1, for the purposes of this opinion.

memorandum from Lynch which outlined five offenses allegedly committed by Plaintiff including refusal to obey a direct order, providing untruthful information in response to a written supervisory order, verbal disrespect/disregard for authority, making false statements to supervisors, and use of government computers for personal activities. Subsequent to the suspension, the conflicts between Plaintiff and Lynch continued over Plaintiff's use of leave and other issues of office administration.

On or about March 24, 1992, Plaintiff filed a formal EEO complaint of racial discrimination against ADAMHA alleging that race was a motivating factor in why Plaintiff was treated differently than other employees by Lynch and Stamper. Paper No. 1 at 13. Around that same time, an investigation was conducted which uncovered that Plaintiff had allegedly falsified her SF–171 (application for employment). Plaintiff had been required to file this form in 1985 during a departmental reorganization and stated that she had no prior criminal record when, in fact, she had been convicted of theft in 1980. Plaintiff explains that she believed that she had received probation before judgment on the theft charge and was not, therefore, obligated to report it on the SF–171. *Id.* at 14.

On or about April 6, 1992, Plaintiff was issued a notice of proposed removal from employment. Paper No. 1, ex. 1 (April 6, 1992 Memorandum). Plaintiff responded to the proposed removal, expressing her view to Stamper that Lynch was a very confused individual in need of mental health treatment who "believes that she is in command of some type of military group and that blacks are still servants on a plantation." *Id.* (April 15, 1992 Memorandum at 1–2). Plaintiff also disputed the specific claims made by Lynch in the proposed removal memorandum, frequently by illustrating that her accusers were just as guilty of the alleged misconduct as she was.

On or about May 7, 1992, Plaintiff was terminated from federal employment. Paper No. 1 at 20. Her termination was effectuated via a memorandum from Stamper dated May 5, 1992. Paper No. 1, ex. 1 (May 5, 1992 Memorandum). In that memorandum,

Stamper stated that he had reviewed the proposal from Lynch as well as Plaintiff's response to the proposal. Stamper then outlined the several incidents which were reasons for Plaintiff's termination. Stamper further stated that "[Plaintiff's] conduct has continuously undermined supervisory authority and harmed the efficiency of the DEA administrative office." May 5 Memorandum at 11.

In July of 1992, Plaintiff filed a complaint with the HHS EEO office. Paper No. 1 at 20. In February of 1995, the HHS EEO issued its decision stating that Plaintiff had not been discriminated against on the basis of race. *Id.* Plaintiff appealed the decision but the initial determination was affirmed. *Id.*

Plaintiff then filed the instant action in the United States District Court for the District of Columbia on October 20, 1995. Upon a determination that venue was lacking in that court, the case was transferred to this Court in the interests of justice pursuant to 28 U.S.C. § 1406(a). Paper No. 20.

## II. *LEGAL STANDARD*

A motion made pursuant to Fed.R.Civ.P. 12(b)(6) allows a claim to be dismissed for failure to state a claim upon which relief can be granted. The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of the statement of the claim. *Chertkof v. Baltimore,* 497 F.Supp. 1252, 1258 (D.Md.1980). The standard for a motion to dismiss is well known: a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Faulkner Advertising Assoc. v. Nissan Motor Corp.,* 905 F.2d 769, 771–72 (4th Cir.1990). For the purposes of ruling on a motion under Rule 12(b)(6), the Court must accept the allegations contained in the complaint as true, and must liberally construe the complaint as a whole. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49; 23 L.Ed.2d 404 (1969); *Finlator v. Powers,* 902 F.2d 1158 (4th Cir.1990).

Defendants' motion is alternatively one for summary judgment. It is well established that summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Id.* at 323, 106 S.Ct. at 2552 (citations omitted).

If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir.1986). Moreover, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." *Id.*

## III. *DISCUSSION*

### A. Defendants Other Than Secretary

■ Title VII requires that a plaintiff who files a civil action claiming employment discrimination must name the head of the allegedly discriminating department or agency as the defendant. 42 U.S.C. § 2000e–16(c). The head of the department or agency is the only proper defendant. *King v. Dalton*, 895 F.Supp. 831 (E.D.Va.1995). "[C]ourts ... have uniformly held that individual federal employees may not be sued for employment discrimination under Title VII." *Id.* at 844 (citations omitted). Therefore, Plaintiff's claims against Defendants Lynch and Stamper will be dismissed.

### B. Failure of Plaintiff's Proof

Summary judgment must be granted where the undisputed facts demonstrate that the plaintiff has failed to present sufficient evidence to support an inference as a reasonable probability that the harm of which he complains was caused by unlawful intentional discrimination. *See Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir.1986) (en banc). To carry her burden of proof, Plaintiff must show that but for the employer's intent to discriminate on the basis of race, Plaintiff would not have been terminated. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir.1992).

Generally, a plaintiff can carry her burden of proof through two methods. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1314 (4th Cir.1993). One way is to provide specific direct evidence of discriminatory intent, proof of which can be "exceedingly difficult." *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir.1988). Plaintiff has not provided any direct evidence that her supervisors' actions were motivated by a racially discriminatory intent.

In the alternative, a plaintiff may produce circumstantial evidence sufficiently probative of the issue as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of discriminatory termination under *McDonnell Douglas*, a plaintiff must prove, by a preponderance of the evidence, that: (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) in spite of her qualifications and performance, she was fired; and (4) following the termination, the position remained open to similar-

ly qualified applicants, was filled with a person of comparable qualifications outside the protected class, or some other evidence that race was not treated neutrally. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir.1989); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186–87, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989); *Holmes*, 794 F.2d at 147.

■ In the instant case, Plaintiff is unable to establish a prima facie case of discrimination. It is undisputed that she is a member of a protected class due to her race (African-American). Although it is also undisputed that she was initially qualified for her position and that she was terminated, Stamper's memorandum of decision to terminate Plaintiff's employment makes clear that Plaintiff's job performance was not satisfactory. Paper No. 26, ex. 24. Stamper outlined in detail the reasons for Plaintiff's termination which included the following: Plaintiff's refusal to obey a direct order and submission of false and misleading information as an excuse for not complying with that order; Plaintiff's oral threat to Lynch; Plaintiff's disrespect for supervisory authority; Plaintiff's falsification of her application for employment; Plaintiff's failure to follow leave procedures; three instances of being absent without leave within a two week period; and using government computers for personal activities.

Stamper's affidavit further elaborates the reasons for Plaintiff's termination. Paper No. 26, ex. 6. Stamper explains that Plaintiff appeared to be "building a case" to cover for the possibility that her position would be challenged and, in so doing, "would search through records, second-guess her supervisor, refuse to carry out duties as assigned by her supervisor, and generally obstruct the smooth functioning of the office." *Id.* at 2. Plaintiff's "attendance at work was unpredictable at best." *Id.* at 3. "She proved herself to be an unwilling, uncooperative and unreliable employee." *Id.* at 4. Although Plaintiff disputes certain facts in Stamper's affidavit, her only response to his general position that her disruptive behavior, as outlined in detail in numerous prior documents, was impeding the smooth functioning of the division was to ask "What behavior and how?" Paper No. 26, ex. 7 at 6.

■ As to the fourth prong of the *McDonnell Douglas* analysis, there is no evidence before the Court as to the race of the person who filled the position after Plaintiff's termination. Neither has Plaintiff presented any other legally sufficient evidence to show that her race was a factor in her termination. *Holmes*, 794 F.2d at 147. Plaintiff alleges that she was treated differently than at least four white employees, Sheila O'Malley, Dorothy Sanders, Michael Moody and Jean Speas. Plaintiff alleges that Sheila O'Malley used a total of 521 hours of leave during 1991, 11 more than Plaintiff, but was not placed on leave restriction and was not ultimately terminated. Paper No. 1 at 3. Plaintiff alleges that Dorothy Sanders was allowed to come to work at 4:00 a.m. and leave at 8:00 a.m. due to her babysitting problems, but Plaintiff was not allowed to begin work at 6:30 a.m. due to her car pool problems. *Id.* at 4. Jean Speas was allegedly 25 minutes late on February 4, 1992 and was not charged any type of leave. *Id.* at 5. Plaintiff, by contrast, was 25 minutes late on March 20, 1992 and was charged one hour AWOL. *Id.* Michael Moody was not required to sign in or out on the time sheets in the office, while Plaintiff was required to do so. *Id.*

The problem with all of these facts is that Plaintiff's alleged abuse of leave prior to the leave restrictions being imposed on Plaintiff was not the reason for Plaintiff's termination, nor was an isolated incident of arriving late to work or failing to sign the time sheets. Therefore, these other employees are not legally sufficient comparators. Defendant argues, and the Court agrees, that Plaintiff would have to show that a white employee was accused of comparably serious offenses to those Plaintiff was accused of, and was not terminated, in order to raise an inference that race was a determining factor in the employer's decision. This Plaintiff has not done.

The Court finds that Plaintiff has failed to provide sufficient evidence to support an inference of discrimination in connection with her termination by Defendant. Accordingly, the Court grants Defendant's Motion for

Summary Judgment with respect to Plaintiff's termination claim.

### C. Retaliation Claim

 Plaintiff's lawsuit claims that she was fired in retaliation for having "reported illegal acts of fraud, unfair treatment and poor management practices within my division to higher institute officials after my supervisor and division director made no effort to correct the wrong doings." Paper No. 1 at 2. To the extent that Plaintiff is claiming that she was retaliated against for being a whistle blower regarding fraud and mismanagement, such claim is not cognizable under Title VII which only protects against retaliation for claims of discrimination. *Jamil v. Secretary, Dep't of Defense,* 910 F.2d 1203 (4th Cir.1990)

Plaintiff also states, however, that her "[s]upervisors were aware of prior EEO activity" and that "reprisal action began when Ms. Lynch and Dr. Stamper learned of my intent to go formal with the [EEO] complaint." Paper No. 1 at 2, 14. To prevail on her retaliatory discharge claim, then, Plaintiff must prove a prima facie case consisting of three parts: 1) that she engaged in protected activity; 2) that HHS took adverse employment action against her; and 3) that a causal connection existed between the protected activity and the adverse action. *Williams,* 871 F.2d at 457.

Here, it is undisputed that she filed an internal EEO complaint prior to her termination. Moreover, it is undisputed that she was terminated. Plaintiff has not provided any evidence or argument as to the causal connection between the protected activity and the adverse action other than the above-quoted statement that her supervisors were aware of her EEO complaint which was filed prior to her termination. While this far from conclusively establishes a causal connection, it is sufficient to make out a prima facie case. *See id.*

As discussed above in connection with the satisfactory performance element of her prima facie case on the termination claim, HHS articulated in detail to Plaintiff at the time, and has since elaborated even further through affidavits attached to the instant mo-

tion, a number of legitimate nondiscriminatory and nonretaliatory reasons for Plaintiff's termination. Paper No. 26, exs. 24, 6, 9.

Other than the fact that at the time she was fired her supervisors were aware that she had filed a discrimination claim, Plaintiff has produced no other evidence of retaliation. Mere knowledge on the part of an employer that the employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter the substantial evidence of legitimate reasons for discharging that employee present in this case. *See Williams,* 871 F.2d at 457. Therefore, summary judgment on the retaliation claim will be granted to Defendant.

### IV. *CONCLUSION*

For the above stated reasons, the Court will grant Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. A separate Order will issue.