**J.W. HEMPERLY, et al., Plaintiffs,**

v.

**Robert B. CRUMPTON, et al., Defendants.**

Civ. A. No. 88–T–248–N.

United States District Court, M.D. Alabama, N.D.

Oct. 19, 1988.

On Motion to Alter, Amend or Vacate Nov. 10, 1988.

Fred D. Gray, Tuskegee, Ala., Von G. Memory, Montgomery, Ala., for plaintiffs.

J. Fairley McDonald, III, Copeland, Frnaco, Screws & Gill, Jerry Carpenter, Asst. Atty. Gen., State Finance Dept., Legal Div., Alabama State House, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The court presently has before it defendants' motion to dismiss filed April 5, 1988. Concluding that plaintiffs' federal claims are presently not ripe for adjudication, the court determines that the defendants' motion is meritorious and should be granted.

### I.

Plaintiffs allege that they are property owners who own or possess an interest in property located in the City of Montgomery, Alabama. They claim that defendants, the State Building Commission, its director, and its individual members, intend to condemn the property to build state offices. Invoking this court's jurisdiction pursuant to 28 U.S.C.A. § 1343(a)(3) and § 1343(a)(4), plaintiffs have alleged deprivations of their rights under the fourteenth amendment and 42 U.S.C.A. § 1983 and § 1988.[1] They seek declaratory and injunctive relief to enjoin defendants from the alleged, threatened condemnation.

Plaintiffs' allegations concern a proposed plan by the defendant Building Commission to place the newly designed Alabama judicial facility on their property. In substance, plaintiffs allege that defendants were originally going to place the judicial facility on other state-owned property until the City of Montgomery intervened. According to plaintiffs' complaint, the city wanted the judicial facility to be located closer to "downtown Montgomery." Plain-

---

1. Plaintiffs' actual pleading invoked jurisdiction under 42 U.S.C.A. § 1983 and § 1988. Neither of these statutes provides jurisdiction for a federal court to hear a claim. However, plaintiffs do cite 28 U.S.C.A. § 1343(a)(3) and § 1343(a)(4) in their complaint as being the substantive statutes that defendants are allegedly violating. The court assumes that plaintiffs inverted their jurisdictional and substantive statutory provisions and intended to proceed in the manner set forth in the text.

tiffs allege that the city convinced the Building Commission to place the judicial facility on their property by agreeing to furnish $2,500,000.00 to the Building Commission to use in purchasing or condemning this new site.

Plaintiffs contend that the Building Commission's decision to build the judicial facility on their property is arbitrary and capricious. They argue that no public notice was given to them that their property was under consideration, that they were not provided an opportunity to speak with the Commission about its proposed plan, and that the Commission's decision was made without the benefit of any surveys, cost comparisons, or analysis. Moreover, plaintiffs allege that the Building Commission has no need to use their property as the site for the judicial complex, and that the Commission has arbitrarily and capriciously threatened to condemn their property. This, plaintiffs claim, violates several of their constitutional rights: (i) the right to receive procedural due process; (2) the right to receive substantive due process; (3) the right not to have property taken for a non-public use; and (4) the right to receive equal protection under law. In addition, plaintiffs allege several pendant claims of violations of Alabama statutory and constitutional law.[2]

## II.

■ In defendants' motion to dismiss, defendants first argue that the eleventh amendment bars this court from considering all claims against the Building Commission, and all state claims against Crompton in his official capacity. Plaintiffs respond by arguing that defendants' arguments "ha[ve] been laid to rest many years ago by this Court," and cite two opinions published over 17 years ago. While plaintiffs are correct that the issue defendants raise has "been laid to rest," they completely ignore the decisions of the Supreme Court and of the Eleventh Circuit during the past decade which have resolved this issue in a manner contrary to plaintiffs' stated position. For example, in *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam), the Supreme Court held that a suit for injunctive relief filed against the State of Alabama and the Alabama Board of Corrections was barred by the eleventh amendment, unless the state had consented to the filing of the suit. *Id.* Finding that there was no showing that the state or the Board of Corrections had consented to the suit, and that no consent could be given under Art. I, § 14 of the Alabama Constitution,[3] the Supreme Court concluded that the State of Alabama and the Board of Corrections must be dismissed from the action. *Id.*, at 782, 98 S.Ct. at 3058.

The holding of *Alabama v. Pugh* is directly applicable in this matter. There can be no serious question as to fact that the Building Commission is an agency of the State of Alabama. *See* 1975 Ala.Code § 41–9–141. Consequently, the eleventh amendment bars plaintiffs from bringing this action against the Building Commission.

Additionally, the eleventh amendment bars any consideration of plaintiffs' state law claims against the individual defendants in their official capacity. As the Eleventh Circuit observed, the Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*"Pennhurst II"*), precludes this court from considering claims that a state official is acting in violation of state constitutional and statutory law:

> [A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.... [T]his principle applies as well to state-law claims brought into

---

2. Plaintiffs contend that the Building Commission does not have the authority to condemn property under state law, and that the proposed actions of the Building Commission are in violation of Article I, Section 6 of the Alabama Constitution, and Sections 23 and 94 of the Alabama Constitution.

3. "The State of Alabama shall never be made a defendant in any court of law or equity."

federal court under pendent jurisdiction....

*Silver v. Baggiano,* 804 F.2d 1211, 1213 (11th Cir.1986) (quoting *Pennhurst II,* 465 U.S. at 121, 104 S.Ct. at 919) (citations omitted).

### III.

■ This leaves only plaintiffs' federal constitutional claims against the individual members and director of the State Building Commission. Addressing first plaintiffs' claims that the Building Commission's actions (1) constitute a taking for a non-public purpose, (2) pose a threat to plaintiffs' right to substantive due process, and (3) deny plaintiffs equal protection of law, the court concludes that these claims are not ripe for disposition. *See Williamson County Regional Planning v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The court notes that, at present, no taking of plaintiffs' property has occurred; indeed, condemnation proceedings have not even been initiated. While plaintiffs have received a bid from the Building Commission for their property, they do not and cannot claim that defendants have actually taken their property. *See Agins v. City of Tiburon,* 447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 2143 n. 5, 65 L.Ed.2d 106 (1980) (pre-condemnation activities cannot be considered a "taking" in the constitutional sense); *Danforth v. United States,* 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939). *See also United States v. 2,175.86 Acres of Land,* 696 F.2d 351, 355 (5th Cir.1983) ("the mere commencement of straight condemnation proceedings, where the government does not enter into the possessions during those proceedings, does not constitute a taking").

As no deprivation of property has occurred, plaintiffs' fourteenth amendment taking claim[4] is obviously premature. *Cf. Williamson County Regional Planning Commission,* 473 U.S. at 193 n. 13, 105 S.Ct. at 3120 n. 13 ("because the Fifth Amendment proscribes takings *without just compensation,* no constitutional violation occurs until just compensation has been denied") (emphasis in original); *Henley v. Herring,* 779 F.2d 1553, 1555 (11th Cir.1986) (ripeness is peculiarly a question of timing). *But see Rosenthal & Rosenthal Inc. v. New York State Urban Development Corp.,* 605 F.Supp. 612, 615 (S.D. N.Y.), *aff'd on other grounds,* 771 F.2d 44 (2nd Cir.1985) (per curiam), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986). If, as plaintiffs allege, there is no public purpose that would be served by a taking of their property, plaintiffs can raise that issue if and when defendants actually attempt to take their property. *See* 1975 Ala.Code §§ 18–1A–90 *et seq.* (Supp.1988).[5]

■ Plaintiffs' substantive due process claim fares no better. The first requirement in proving a violation of substantive due process in the context of a § 1983 action is that there must be a deprivation of a federal constitutionally protected interest. *Rymer v. Douglas County,* 764 F.2d 796, 801 (11th Cir.1985). While it is undisputed that plaintiffs have a federal constitutionally protected right to own the property in question, defendants have not yet

---

**4.** In *Hawaii Housing Authority v. Midkin,* the Supreme Court notes that while the fourteenth amendment has no independent "public use" requirement, the "public use" requirement is made binding on the States via incorporation of the fifth amendment's Eminent Domain Clause through the fourteenth amendment's due process clause. 467 U.S. 229, 244 n. 7, 104 S.Ct. 2321, 2331 n. 7 (1984).

**5.** Plaintiffs have not contended that the statutory procedures are inadequate either to protect their rights or that the procedures would not provide plaintiffs with an opportunity to challenge the purpose motivating the taking. Past history has shown that the Alabama courts are amenable to considering arguments by landowners that the purpose being served in acquiring property through condemnation serves no public purpose. *See Florence v. Williams,* 439 So.2d 83, 88–90 (Ala.1983); *City of Alabaster v. Housing Authority of the Town of Columbiana,* 451 So.2d 336, 338–39 (Ala.Civ.App.1984); *Nicrosi v. City of Montgomery,* 406 So.2d 951, 952 (Ala.Civ.App.1981); *Hogan v. Alabama Power Co.,* 351 So.2d 1378, 1386 (Ala.Civ.App.1977). *Cf. Alabama Electric Co-operative, Inc. v. Watson,* 419 So.2d 1351, 1354–57 (Ala.1982) (discussing the judicial standard of review for public purpose or necessity determinations in condemnation proceedings).

done anything to deprive them of this right.

Equally unavailing at the present moment is plaintiffs' fourteenth amendment equal protection claim. The only action that plaintiffs contend that the Building Commission has taken is to notify plaintiffs of its desire to acquire their property. Such an offer to acquire property simply does not rise to the level of a violation of equal protection.[6]

### IV.

Plaintiffs' procedural due process claim that defendants decided to condemn their property without first conducting a hearing on the matter is without merit. Again, it is important to note that plaintiffs are not alleging that the state eminent domain procedures that may be utilized to take their property are constitutionally inadequate, *see supra,* at p. 1250 n. 5; rather, they are alleging that they should have been granted a hearing prior to the alleged selection of their property as the site of the new judicial facility.

The decision to exercise the power of eminent domain is, in the first instance, strictly a legislative decision. *Berman v. Parker,* 348 U.S. 26, 32–34, 75 S.Ct. 98, 102–103, 99 L.Ed. 27 (1954). The determination of whether land is needed to satisfy a "public use" is at the zenith of a sovereign's police power. *Hawaii Housing Authority v. Midkiff,* 467 U.S. at 241, 104 S.Ct. at 2329. There is no constitutional requirement that the legislature or other governmental agency vested with the power of eminent domain must include interested individuals when deciding what constitutes a public use, and what properties will be needed to serve the designated public purpose. *Joiner v. City of Dallas,* 380 F.Supp. 754, 769–71 & n. 18 (N.D.Tex.) (per curiam) (3–judge panel), *aff'd,* 419 U.S. 1042, 95 S.Ct. 614, 42 L.Ed.2d 637 (1974); *Id.,* at 764–65 & n. 6 (collecting cases). *See Collier v. City of Springdale,* 733 F.2d

1311, 1314–15 & n. 5 (8th Cir.1984), *cert. denied,* 469 U.S. 857, 105 S.Ct. 186, 83 L.Ed.2d 120 (1984); *Government of Virgin Islands v. 19,623 Acres of Land,* 536 F.2d 566, 570–71 (3rd Cir.1976).

This is not to suggest that the plaintiffs have no due process rights. "[I]t has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982) (quoting *Board of Regents v. Roth,* 408 U.S. [564], 570–71 n. 8, 92 S.Ct. [2701], 2704–05, n. 8 [33 L.Ed.2d 548] [(1972)] (emphasis in original)). There is no question that plaintiffs have the right to challenge a legislative determination of "public use", although the judicial review of this determination is highly deferential to the legislative decision. *Hawaii Housing Authority v. Midkiff,* 104 S.Ct. at 2329 ("the Court has made clear that it will not substitute its judgment as to what constitutes a public use unless the use be palpably without reasonable foundation") (quotation omitted)); *Berman v. Parker,* 348 U.S. at 33, 75 S.Ct. at 102. However, as stated above, this challenge can be made if and when condemnation proceedings to acquire plaintiffs' property are initiated.

### V.

In summation, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the court concludes that defendants' motion to dismiss should be granted. An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of this court that:

(1) Defendants' motion to dismiss filed April 5, 1988, be and it is hereby granted;

---

**6.** Plaintiffs in their brief suggest that the City of Montgomery violated their right to equal protection when it borrowed money and lent its credit to the Building Commission for the purpose of acquiring plaintiffs' property. Insomuch as the City of Montgomery is not a party to this lawsuit, the court will not address this contention.

(2) This action is dismissed without prejudice; and

(3) Costs are to be taxed against the plaintiffs.

## ON MOTION TO ALTER, AMEND OR VACATE

The court presently has before it plaintiffs' October 28, 1988, motion to alter, amend or vacate, or in the alternative, reconsider. In that motion, plaintiffs argue that the "threat of condemnation" is sufficient to constitute a taking under the federal constitution. Significantly, plaintiffs cite no law in support of this contention.

■ To the extent that plaintiffs contend that actual physical intrusion by the government is not necessary to constitute a taking, they are undoubtedly correct. For example, in *Pennsylvania Coal Co. v. Mahon*, the Supreme Court recognized that, under certain circumstances, government land use regulations could suffice to invoke the protection of the fifth amendment's Takings Clause. 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Moreover, only a little over a year ago, the Supreme Court recognized that even "temporary regulatory takings" by government were protected under the fifth amendment. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).

■ But here, there are no land use regulations at issue. Plaintiffs are not challenging any state or local ordinance that restricts the uses that they may desire for their property. Instead, they merely argue that the threat of condemnation has created untoward publicity that has affected their ability to attract and retain tenants.

That a taking is a prerequisite to plaintiffs' claims cannot be denied. Whether the proposed action by the Building Commission serves a public purpose is only relevant if the Building Commission acts upon the proposal. Should the Building Commission determine tomorrow that another site serves its purposes, or discard the entire idea of building a new judicial facility, the fact that the Building Commission once, with an allegedly improper motive, considered plaintiffs' property simply would not rise to the level of a violation of the fifth amendment's takings for a public purpose clause.

Under the facts of this case, plaintiffs have not established the fact that the requisite "taking" necessary to support their "no public use" argument has occurred.[1] The Supreme Court has provided some guidance as to when a "taking" occurs in an eminent domain proceeding. In *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), the Court addressed the contention that certain governmental actions prior to the commencement of condemnation proceedings could constitute a taking:

> Appellants also claim that the city's precondemnation activities constitute a taking. The State Supreme Court correctly rejected the contention that the municipality's good-faith planning activities, which did not result in successful prosecution of an eminent domain claim, so burdened the appellant's enjoyment of their property as to constitute a taking. Even if the appellants' ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decision-making, absent extraordinary delay, are "incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense."

*Id.*, 447 U.S. at 263 n. 9, 100 S.Ct. at 2143 n. 9 (citations omitted).[2]

---

**1.** Indeed, in their complaint, plaintiffs implicitly recognized that a "taking" had not yet occurred: "The taking of property pursuant to these threatened condemnation proceedings *will amount to the taking of Plaintiffs' property* without due process of law in violation of their federal constitutional rights." Complaint, para. 23 (emphasis added).

**2.** In fact, in *First English Evangelical Church*, the Supreme Court distinguished its holding in *Agins* by noting that the holding of *Agins* was that "the preliminary activity [leading up to the

Later, in *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984), the Supreme Court addressed the issue of when a taking occurs for compensation purposes. The petitioner argued that the filing of a complaint in condemnation and a notice of *lis pendens* so abrogated his rights that a taking occurred at that moment, and not when the land was officially appropriated. *Id.*, 467 U.S. at 13, 104 S.Ct. at 2196.

The Supreme Court rejected this argument. In so doing, it noted that it had previously recognized that a governmental taking may occur without the government physically intruding upon the premises or acquiring a legal interest in the property. Underlying these holdings was the sense that:

> while most burdens consequent upon government action undertaken in the public interest must be borne by individual landowners as concomitants of " 'the advantage of living and doing business in a civilized community,' " some are so substantial and unforeseeable, and can so easily be identified and redistributed, that "justice and fairness" require that they be borne by the public as a whole. These considerations are as applicable to the problem of determining *when* in a condemnation proceeding the taking occurs as they are to the problem of ascertaining *whether* a taking has been effected by a putative exercise of the police power.

*Id.*, 467 U.S. at 14, 104 S.Ct. at 2196 (emphasis in original) (footnotes omitted). These principles, the Court concluded, did not require a finding that a taking occurred upon commencement of the condemnation proceedings:

> However, we do not find, prior to the payment of the condemnation award in this case, an interference with petitioner's property interests severe enough to give rise to a taking under the foregoing theory. Until title passed to the United States, petitioner was free to make whatever use it pleased of its property.... Indeed, petitioner is unable to point to

any statutory provision that would have authorized the Government to restrict petitioner's usage of the property prior to payment of the award.... At least in the absence of an interference with an owner's legal right to dispose of his land, even a substantial reduction of the attractiveness of the property to potential purchasers does not entitle the owner to compensation under the Fifth Amendment.

*Id.*, 467 U.S. at 14–15, 104 S.Ct. at 2196–97 (footnotes omitted).

Similarly, plaintiffs here have had no restrictions placed on their utilization of the property at issue. As with the petitioners in *Kirby Forest Industries*, plaintiffs are not limited by the Building Commission's threatened action in their usage of the property nor in their capacity to sell the property to a third party.

Moreover, this court simply refuses to prejudge an argument that plaintiffs may raise during a state condemnation proceeding, should such a proceeding be brought. As this court discussed in its October 19, 1988, memorandum opinion, the Alabama courts have expressed a willingness to consider arguments that a proposed taking either will not further a public purpose or is arbitrary and capricious under the circumstances. *See Palughi v. City of Mobile*, 526 So.2d 1, 1–2 (Ala.1988) (pursuant to 1975 Ala.Code § 18–1A–151, trial court must determine whether condemnation is for public good), *cert. denied*, —— U.S. ——, 109 S.Ct. 143, 102 L.Ed.2d 115 (1988); *Alabama Power Co. v. Taunton*, 465 So.2d 1105 (Ala.1984) (per curiam) (finding that proposed property condemnation was arbitrary and capricious); *Florence v. Williams*, 439 So.2d 83, 88–90 (Ala.1983); *City of Alabaster v. Housing Authority of the Town of Columbiana*, 451 So.2d 336, 338–39 (Ala.Civ.App.1984); *Nicrosi v. City of Montgomery*, 406 So.2d 951, 952 (Ala. Civ.App.1981); *Hogan v. Alabama Power Co.*, 351 So.2d 1378, 1386 (Ala.Civ.App.), *cert. denied sub nom. Ex parte Hogan*, 351 So.2d 1388 (Ala.1977). *Cf. Alabama Electric Co-operative, Inc. v. Watson*, 419

condemnation proceedings] did not work a tak-

ing." *Id.*, 482 U.S. at ——, 107 S.Ct. at 2388–89.

So.2d 1351, 1354–57 (Ala.1982) (discussing the judicial standard of review in condemnation proceedings of public purpose or necessity determinations). Should the Building Commission actually institute state condemnation proceedings, plaintiffs will not be denied a forum to raise their claims.[3]

Accordingly, it is the ORDER of this court that plaintiffs' motion to alter, amend or vacate, or in the alternative, to reconsider, filed on October 28, 1988, be and is hereby denied.

**3.** And again, it is worth noting that plaintiffs have not contended that the procedural safeguards set forth in the Alabama statute governing condemnation proceedings, *see* 1975 Ala. Code §§ 18–1A–90 *et seq.* (Supp.1988), are inadequate to protect their rights.