**LANGLEY LAND CO., Plaintiff,**

v.

**MONROE COUNTY, et al., Defendants.**

**Civ. No. 90–75–3–MAC(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

June 6, 1990.

Robert C. Norman, Jr., Charles L. Ruffin, Jones, Cork & Miller, Macon, Ga., Charles H. Tisdale, Jr., King & Spalding, Atlanta, Ga., for plaintiff.

James A. Vaughn, Mills, Freeman, Vaughn & Sosebee, Charles B. Haygood,

Jr., Forsyth, Ga., Spencer C. Weiss, Frederick L. Wright, II, Smith, Currie & Hancock, Atlanta, Ga., for defendants.

FITZPATRICK, District Judge.

Before the court is defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff Langley Land Company (hereinafter "Langley"), which owns property located in Monroe County, filed suit against Monroe County and its Board of Commissioners pursuant to 42 U.S.C. § 1983 and § 1988. Langley claims defendants' threatened exercise of the County's eminent domain power will violate its rights under the Fifth and Fourteenth Amendments. Plaintiff seeks declaratory and injunctive relief to enjoin defendants from carrying out the threatened condemnation of Langley's land which would allegedly interfere with plaintiff's federal constitutional rights. The court heard oral argument on the motion on May 23, 1990, and, after full consideration, is prepared to rule.

## I. BACKGROUND

In ruling on defendants' motion to dismiss, the court accepts as true the well-pleaded facts stated in the plaintiff's complaint.[1] *Brown v. Ivie,* 661 F.2d 62 (Former 5th Cir. Unit B Nov.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). It is undisputed that a landfill is a public use. Plaintiff contends, however, that the Commissioners' decision to place a public solid waste landfill on Langley's 200–acre tract of land is arbitrary and capricious. The decision allegedly constitutes a misuse and abuse of Monroe County's eminent domain power—

depriving plaintiff of its substantive due process rights. Defendants allegedly targeted Langley's land during the site selection process. Secondly, plaintiff argues that no reasonable probability exists that the County's proposed landfill on plaintiff's land will ever be permitted under the requirements of state and federal law; Langley disputes whether the land, if condemned, can achieve its purported public use. If the County cannot obtain the necessary permits to use plaintiff's land as a landfill, the condemnation of plaintiff's property would violate Langley's rights protected by the Fifth and Fourteenth Amendments.[2] Thirdly, plaintiff asserts that the condemnation of Langley's land in these circumstances would also allegedly constitute an abuse of the defendants' power of eminent domain, resulting in a deprivation of plaintiff's substantive due process rights under the Fourteenth Amendment. Lastly, plaintiff claims that the threatened condemnation involves an amount of property in excess of Monroe County's needs. This allegedly unlawful, *ultra vires,* arbitrary and capricious exercise of defendants' state law eminent domain powers would violate plaintiff's Fifth and Fourteenth Amendment rights. Summarily stated, Langley maintains the following four claims: (1) targeting substantive due process claim; (2) public use claim; (3) condemnation substantive due process claim; and (4) excessive condemnation claim.

## II. DISCUSSION

### A. RIPENESS AND SUBJECT MATTER JURISDICTION

■ As a threshold matter, the court will address the issue of ripeness. Ripeness goes to whether or not this court has sub-

---

**1.** The claims as set forth in the complaint are to some extent confusing. For the purposes of this motion, the court therefore accepts plaintiff's characterization of its claims as set forth in Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss.

**2.** The Eminent Domain Clause of the Fifth Amendment provides "... nor shall private property be taken for public use, without just compensation." Since the property will alleg-

edly be of no use, it would violate the "public use" clause of the Fifth Amendment. The "public use" requirement "is made binding on the States only by incorporation of the Fifth Amendment's Eminent Domain Clause through the Fourteenth Amendment's Due Process Clause." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 244 n. 7, 104 S.Ct. 2321, 2331 n. 7, 81 L.Ed.2d 186 (1984).

ject matter jurisdiction over the case. A careful examination of the problem of ripeness leads the court to conclude that three of plaintiff's claims are not ripe for disposition. *See Williamson County Regional Planning Comms. v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Hemperly v. Crumpton,* 708 F.Supp. 1247 (M.D.Ala. 1988).[3] At present, no taking of plaintiff's property has occurred.

Plaintiff brought this suit to enjoin Monroe County from condemning its land. Defendants admit that they have selected plaintiff's property for condemnation, but plaintiff does not, and cannot, claim that defendants have actually taken its property. *See Agins v. City of Tiburon,* 447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 2143 n. 9, 65 L.Ed.2d 106 (1980) (pre-condemnation activities cannot be considered a "taking" in the constitutional sense); *Danforth v. United States,* 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939) (the mere enactment of legislation which authorizes condemnation cannot be considered a "taking"; for an action to constitute a taking, "it must result in appropriation of the property to the uses of the Government"). Defendants' decision selecting Langley's land for condemnation has not yet resulted in the appropriation of Langley's property to the use of Monroe County.[4]

According to Georgia law, under the facts of the case at bar, a condemning body may not obtain title to property merely by filing a condemnation proceeding. Georgia law requires further proceedings. The defendants have indicated that Monroe County, as the condemning body (the condemnor), wishes to use the condemnation proceeding before a special master,[5] as provided in Article 2, Chapter 2 of Title 22, Eminent Domain, in the Official Code of Georgia Annotated, in particular, O.C.G.A. §§ 22–2–100 *et seq.* (1982). A condemnation procedure before a special master "is intended to provide a simpler and more effective method of condemnation in those cases where a judicial supervision of the proceedings is desirable ... in cases where there are parties ... who are nonresidents, or in cases where there are conflicting interests or doubtful questions." O.C.G.A. § 22–2–101.

Section 22–2–107(g) provides in part:

Insofar as concerns the right of the condemning body to take or damage the property or any interest therein, upon the payment of the amount awarded by the special master into the registry of the court, the award of the special master and the judgment of the court condemning the property or interest to the use of the condemning body shall be conclusive.

Nothing is conclusive concerning Monroe County's right to take Langley's land until the special master's award is paid into the court registry. Pursuant to O.C.G.A. § 22–2–110(b), before title to the property can vest in the condemnor, the special master must hold a hearing and the condemnor (Monroe County) must then file the award with the clerk of the Monroe County Superior Court.

3. Langley misconstrues the court's decision in *Hemperly* as presuming the plaintiffs' claim was one for denial of just compensation. Plaintiff's Brief, p. 31. This court believes the claims raised in *Hemperly,* including the right to receive substantive due process and the right not to have property taken for a non-public purpose, are similar to plaintiff's claims in the instant case. Furthermore, this court is inclined to follow the sound and logical reasoning of *Hemperly,* which it finds applicable to the case at bar.

4. Langley has not alleged any diminution in its land's value or any diminution in its use of the land as a result of any of the actions taken by the defendants thus far.

5. Letter from James A. Vaughn [attorney for defendant Monroe County] to Judge Duross Fitzpatrick (April 30, 1990). Defendants, via this letter, informed the court that Monroe County had filed a Special Master condemnation against plaintiff's 200–acre tract. (During a telephone conference call held April 30, 1990, the court ordered that service of the filing be stayed, pending clarification of an earlier court order. After a hearing held on May 3, 1990, the defendants informed the court that they would withdraw the filing pending the court's decision on the present motion.)

The award shall become a part of the record of the proceedings in said matter and shall condemn and vest title to the property or other interest in the condemning body upon the deposit by that body of the amount of the award into the registry of the court, subject to the demand of such condemnee or condemnees, according to their respective interests. O.C.G.A. § 22-2-110(b) (1989). Not until these hurdles are cleared can there Monroe County take final action or make a final decision to condemn plaintiff's property.

Langley will have a chance to voice its concerns and raise its objections to the taking of its property during the special master hearing. The special master may decide that plaintiff is correct in its allegations that its property would never pass the state and federal requirements and thus could never be used as a public landfill.[6] Title to Langley's land may never vest in Monroe County. At this moment in time,[7] there has been no final decision about the condemnation of Langley's land, therefore there has been no "taking."

Earlier in the litigation, defendants attempted to file condemnation papers in Superior Court.[8] As stated above, even if the papers were filed, without further action, this could not create a taking. The Fifth Circuit has noted that "the mere commencement of straight condemnation proceedings, where the government does not enter into possession during those proceedings, does not constitute a taking." *United States v. 2,175.86 Acres of Land*, 696 F.2d 351, 355 (5th Cir.1983), (citing *Agins*,

447 U.S. at 225 n. 9, 100 S.Ct. at 2143 n. 9), *aff'd sub nom. Kirby Forest Industries Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984). "The Supreme Court has recognized that a taking may occur where a governmental entity exercises its power of eminent domain through formal condemnation proceedings." *A.A. Profiles, Inc. v. City of Ft. Lauderdale*, 850 F.2d 1483, 1486 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989); *Fountain v. Metro. Atlanta Rapid Transit Authority*, 678 F.2d 1038, 1043 (11th Cir.1982) ("Normally, an official taking of private property occurs when a governmental body exercises its eminent domain power in a condemnation proceeding."). Monroe County has not yet exercised its power of eminent domain.

Because the County has not yet obtained title to the property through formal condemnation proceedings, as provided for by Georgia law, there has been no final official taking of Langley's land. *See Rymer v. Douglas County*, 764 F.2d 796, 800 (11th Cir.1985). The Eleventh Circuit recognized recently in *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1574 n. 8 (11th Cir.1989), that "[p]laintiffs presenting takings and/or substantive due process claims must demonstrate that the challenged decision or regulation is final." Langley is unable to meet the finality requirement with respect to three of its four claims.[9]

In *Williamson County*, the Supreme Court explained that although there is no requirement of the exhaustion of administrative remedies,[10] the administrative ac-

---

6. This court is not passing judgment as to the merits of plaintiff's claims, or its likelihood of prevailing in the condemnation proceeding.

7. This court deplores the use of "point in time" as an attempt to specify a particular instant or event. This "point in distance," perhaps, but time has moments—not points. One of the lesser crimes arising from the Watergate debacle was John Dean's persistent and incorrect use of the phrase "at this point in time." In the ensuing years, this term has apparently embedded itself in the fabric of the English language—at least on this side of the Atlantic. Quite frankly, the court's use of the term "moment in time" was inserted herein merely to give the court a platform to make this observation.

8. The court has ordered a stay of any action in state proceedings pending a decision in federal court. There has not been any condemnation proceeding at all.

9. Langley's public use claim, condemnation substantive due process claim, and excessive condemnation rely on the land being condemned or taken. There is no final action or decision upon which to base these claims. These claims are thus premature.

10. It is well-recognized that a plaintiff need not exhaust state or administrative remedies before bringing a § 1983 action. *See Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

tion must be final before a plaintiff's section 1983 action is judicially reviewable.

> While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

*Williamson County*, 473 U.S. at 193, 105 S.Ct. at 3120. Even though the § 1983 claim in *Williamson County* involved a just compensation claim for a regulatory taking, the finality requirement would also apply to a governmental taking. The court thus reaches the same result: Langley cannot meet the finality requirement. A decisionmaker has not arrived at a definitive position that inflicts an actual, concrete injury. Any injury that may be inflicted is too uncertain and hinges upon too many contingencies to be justiciable. There has not been a conclusive determination that Langley's land will be condemned, thus Langley's claims depending upon condemnation are premature and are not judicially reviewable.

The court disagrees with plaintiff's argument that the case is ripe for decision. Plaintiff relies on *Chertkof v. Mayor & City Council of Baltimore*, 497 F.Supp. 1252 (D.Md.1980), and contends that *Chertkof* is applicable to the case at bar.[11] The court believes that the instant case is distinguishable from *Chertkof* in a number of ways. The most glaring difference between the two cases is plaintiff's allegation in *Chertkof* that the governmental taking was to be for private use. *Chertkof* does not deal with federal intervention in a state condemnation procedure when the reported purpose is conceded to be public; this case

does. This court does not disagree with the *Chertkof* court's statement that "Generally, a case is ripe for adjudication when objective evidence of threatened state action establishes that the need to protect a plaintiff's rights outweighs the disadvantages of adjudication." *Chertkof,* 497 F.Supp. at 1255 (citing Brilmayer, *The Jurisprudence of Article III: Perspectives on the "Case or Controversy" Requirement,* 93 Harv.L.Rev. 297, 299 (1979)). But the threatened condemnation of Langley's land is for a public, not a private, use. Unlike *Chertkof,* in the case at bar, the potential costs of federal adjudication outweigh the need to protect the plaintiff's rights.

An analysis of the three deciding factors in *Chertkof* reveals "significant disadvantages to the exercise of jurisdiction at this time." *Chertkof,* 497 F.Supp. at 1257. This case does share with *Chertkof* one factor that weighs in favor of federal adjudication: since the Monroe County Board of Commissioners has "already completed its decision making process respecting the [land to be condemned for the landfill], there is little danger of federal judicial intervention in the local planning process." *Id.* An examination of the other two factors, however, shows the potential high costs of federal adjudication.

The instant case involves a law of general applicability, so the risks of a flood of suits are not minimal. This case deals with the exercise of the eminent domain power to create a public landfill. The court can envision a dramatic increase in the number of lawsuits in federal court challenging the condemnation procedures for a public landfill, based on the argument that the land never will be used for a public use because the landfill cannot receive the required permits for environmental reasons. In addition, plaintiff argues that the site selection process for the public landfill was biased against nonresident property owners. The

---

**11.** The plaintiff summarizes *Chertkof* as standing for the proposition that "an owner of property can enjoin condemnation under Section 1983 where action of local governmental authority in condemning property would violate the property owner's due process rights." Letter from Bob Norman [counsel for plaintiff] to Judge Duross Fitzpatrick, p. 2 (May 24, 1990) (discussing cases involving application of substantive due process principles to condemnations).

court can conceive of many more lawsuits challenging any condemnation procedure based on discrimination by the legislative body against nonresident landowners. The arguments that form the basis of Langley's lawsuit thus could form the basis for a plethora of lawsuits in federal court if the court decided it had subject matter jurisdiction to hear this type of case.

Finally, awaiting a final action regarding the land would "add significantly to the availability of operative facts necessary for determination of the parties' dispute." *Id.* The plaintiff has raised a number of concerns about the reasonable probability of the land ever being able to be operated as a landfill. If plaintiff is correct, the land may never receive the necessary permits; the special master may decide in favor of Langley; there may never be a condemnation; and, there may never be a taking. This court is concerned that any order or decision it renders at this time would be based only upon a hypothetical set of facts.

The court understands that a landfill acquisition differs somewhat from the traditional public uses for which the power of eminent domain is exercised because of the array of environmental and wetlands permits that must be obtained before operating a landfill. If Monroe County is never able to obtain the environmental permits necessary to build the landfill on the Langley site, then the County will not be able to develop the landfill. At that time the County's public use determination would involve an impossibility. If a final determination had nonetheless been reached that Langley's land was to be condemned, there would then be a taking for a non-public use; Langley's claim would be ripe.[12] At this time, however, the court concludes that not only does the court not have the operative facts necessary to make a determination of these parties' dispute, but if the court did decide this action, it would open the doors to many other parties' disputes. The disadvantages of federal adjudication outweigh the need to protect plaintiff's rights which have yet to mature.

In the instant case, there has been no final, reviewable decision that would inflict an actual, concrete injury. There has been no adverse decision regarding whether or not Langley's land will be condemned. Plaintiff's Fifth and Fourteenth Amendment rights may never be violated and plaintiff's may never be deprived of its substantive due process rights in connection with the condemnation proceeding. As no deprivation of property has occurred, plaintiff's public use, condemnation substantive due process, and excessive condemnation claims are not ripe.[13] This court therefore lacks jurisdiction over these claims and must grant defendants' motion to dismiss.

## B. LANGLEY'S TARGETING SUBSTANTIVE DUE PROCESS CLAIM

At oral argument, plaintiff focused on its fourth claim: the targeting substantive due process claim. Langley claims that defendants targeted nonresidents' property, in particular, Langley's

12. The court notes that defendants indicated that if they were unable to procure the necessary permits to develop the land for a landfill they would transfer the land back to the plaintiff. If this promise to reconvey the land back to the plaintiff were included in some written document, it might head off extensive and expensive litigation later. It does not appear that the plaintiff will suffer irreparable injury. (Langley would also have a remedy of bringing an inverse condemnation proceeding if it lost the use or benefit of its land pending a decision.)

13. *Cf. Williamson County,* 473 U.S. at 194 n. 13, 105 S.Ct. at 3120 n. 13. "Because the Fifth Amendment proscribes takings *without just compensation,* no constitutional violation occurs until just compensation has been denied." This court believes that this is analogous to the claim at bar; there can be no constitutional violation of plaintiff's Fifth and Fourteenth Amendment rights (in relation to its public use claims) until there has been a taking. Just as "[i]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation," it appears that if a State provides an adequate procedure to determine whether the land's public use will be realized, then the property owner cannot claim a violation for a taking for a non-use until it has used the procedure. *Williamson County,* 473 U.S. at 195, 105 S.Ct. at 3121.

property, when selecting a site for condemnation and that this deprived plaintiff of its substantive due process rights. Because it is uncontested that the defendants have already selected plaintiff's 200–acre tract of land as the site for the proposed public landfill, the court believes the issue is ripe. There is a final reviewable decision.[14] "A property owner has been denied substantive due process ... the moment a governmental decision affecting his property has been made in an arbitrary and capricious manner, regardless of whether he is later compensated for that violation." *Greenbriar, Ltd.*, 881 F.2d at 1574 n. 8. The court finds that it has jurisdiction over this claim and will consider defendants' motion to dismiss plaintiff's targeting substantive due process claim pursuant to Federal Rules of Civil Procedure 12(b)(6).

Plaintiff contends that the defendants' decisions regarding the site selection process were primarily motivated by political considerations and thus were arbitrary and capricious, constituting an abuse and misuse of power. While the defendants selected ten potential sites for the landfill, only three of those ten sites were drilled and surveyed for further consideration. Langley owned all three of those sites. Plaintiff asserts that defendants targeted property owned by nonresidents to avoid opposition to the condemnation by resident land own-

ers. The court will view that assertion as an issue of substantive due process.[15]

The Eleventh Circuit has developed a two-part test to analyze alleged substantive due process violations.

> The current test in this circuit as to whether there has been a violation of substantive due process in the context of § 1983 is twofold. First, it must be determined whether there has been a deprivation of a federal constitutionally protected interest, and secondly, whether the deprivation, if any, is the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation.

*Rymer v. Douglas County*, 764 F.2d 796, 801 (11th Cir.1985), *quoted in Greenbriar, Ltd.*, 881 F.2d at 1577. The court need not address the first prong [16] because the plaintiff is unable to pass the key part of the test, the second prong. *See Greenbriar, Ltd.*, 881 F.2d at 1577 & n. 13.

The Eleventh Circuit has held that "[t]he substantive due process doctrine proscribes 'deprivation of a property interest for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis.'" *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989) (quoting *Hearn v. City of*

---

**14.** There remain doubts as to whether the court should exercise jurisdiction over the substantive due process claim in the context of an action with a takings claim. The Eleventh Circuit has not addressed this. *See Greenbriar, Ltd.*, 881 F.2d at 1580 n. 22. The court will follow *Anthony v. Franklin County*, 799 F.2d 681, 684 (11th Cir.1986), and consider the claim.

**15.** Plaintiff's complaint is couched in the language of substantive due process and does not contain or allege an equal protection claim. Plaintiff first raises equal protection in Plaintiff's Response to Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, p. 20. The complaint does not specifically contain an equal protection claim.

**16.** The court questions whether the selection of property in itself, without the actual taking, is a "decision affecting" property so as to rise to the stature of a constitutional violation. Plaintiff has not alleged precisely how the selection of the 200–acre tract for the proposed landfill affected its property. The court finds it difficult to identify what federal constitutionally protect-

ed interest the plaintiff has been deprived of without any further action on the part of the defendants.

In *Williamson County*, the Supreme Court reversed the Court of Appeals on the ground that the respondent's claim was "premature, whether it is analyzed as a deprivation of property without due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment." *Williamson County*, 473 U.S. at 200, 105 S.Ct. at 3123. In a footnote, the Court cited a judge who, dissenting from the Court of Appeals majority opinion below, "would have held that mere fluctuations in value during the process of governmental decisionmaking are 'incidents of ownership' and cannot be considered a 'taking.'" *Williamson County*, 473 U.S. at 184 n. 8, 105 S.Ct. at 3115 n. 8 (citing 729 F.2d 402, 410 (6th Cir. 1984)). Plaintiff has not even alleged any fluctuation in the value of its property. This may be an interim claim that is a by-product of the process of governmental decisionmaking.

*Gainesville,* 688 F.2d 1328, 1332 (11th Cir. 1982)). Defendants contend that there was a rational basis for the site selection, thus there was no denial of substantive due process. Plaintiff argues that all of these elements are not essential for there to be a violation of substantive due process. In addition, Langley argues that the targeting of its property was without any rational basis because the decision was made for political reasons and the land will never be permitted for use as a public landfill.

The court will first address plaintiff's contention that the land in question cannot qualify for use as a landfill. The Eleventh Circuit explained that "Economic and social legislation is presumed valid if it is rationally related to a legitimate state interest." *Anthony v. Franklin County,* 799 F.2d at 684. The Supreme Court "has made clear that it will not substitute its judgment for a legislature's judgment as to what constitutes a public use 'unless the use be palpably without reasonable foundation.'" *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 241, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984) (citing *United States v. Gettysburg Electric R. Co.,* 160 U.S. 668, 680, 16 S.Ct. 427, 429, 40 L.Ed. 576 (1896)). Nevertheless, plaintiff's complaint can be interpreted as asking the court to substitute its judgment for the County's judgment. At this time, and at the time Monroe County made its decision to exercise its power of eminent domain, the exercise of that power is, and was, rationally related to a conceivable public purpose. It is undisputed that a landfill is a legitimate state interest and a proper project for condemnation. The use of the condemned land for a public landfill is palpably with reasonable foundation.

If the court followed plaintiff's line of reasoning to its logical conclusion, any landowner could contest a governmental entity's decision to condemn land for a landfill by coming to federal court to enjoin the threatened state condemnation proceedings. The landowner would merely argue that the proposed use is without palpable foundation because the landfill probably will not be permitted. The federal court would then be a substitute for the same proceedings on a state court level in a case where it is recognized that the use of the land, if permitted, would be public. The court is unpersuaded by plaintiff's argument.

The court's role in reviewing a legislature's judgment of what constitutes a public use is "an extremely narrow" one. *See Midkiff,* 467 U.S. at 240, 104 S.Ct. at 2329; *Berman v. Parker,* 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954). Plaintiff is asking the court to broaden that role in reviewing a county's judgment that certain land is suitable for a landfill.[17] The argument is even more attenuated in that plaintiff does not challenge the County's judgment that a landfill is public use, rather plaintiff argues that *its* land cannot be used as a landfill. As stated above, the court feels the facts are too hypothetical and too tenuous at this time to so hold. In addition, the Supreme Court's following statement in *Berman* guides this court.

> It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.

*Berman v. Parker,* 348 U.S. at 35–36, 75 S.Ct. at 104. Plaintiff contends that the court should sit in review on the County's judgment to condemn Langley's land based on the character of the land. The court declines to do so.

Plaintiff also contests defendants' site selection process on the grounds that it was allegedly arbitrary, pretextual, and improperly motivated.[18] The Eleventh Circuit

---

17. The court is aware that defendants brought in an independent consulting firm to help select, survey, and explore sites.

18. Plaintiff argues: 1) The decision could not have a rational basis if there were improper political motivation and discrimination against non-residents; and 2) Even if there were a ra-

addressed this issue in a zoning case, and the court believes that analysis is applicable to this contention in the instant case.

"Nothing is more common in zoning disputes than selfish opposition to zoning changes. the Constitution does not forbid government to yield to such opposition; it does not allow the characteristic operations of democratic ... government, operations which are permeated by pressure from special interests.... The fact 'that town officials are motivated be parochial views of local interests which work against plaintiffs' plan and which may contravene state subdivision laws' ... does not state a claim of denial of substantive due process."

*Greenbriar, Ltd.,* 881 F.2d at 1579 (quoting *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 467 (7th Cir.1988)). The court does not believe that a claim of discrimination on the basis of nonresidency states a claim of denial of substantive due process. Had the decision been based on considerations that violate a specific constitutional guarantee, or was based on race or color, it would be invalid.[19]

In the instant case, at oral argument, plaintiff hinted at a personal or illegitimate motive. Plaintiff claimed that the County's attorney had steered the defendants away from selecting a site next door to his house.[20] The court believes the decision to select land that is not in a residential section has a rational basis, and is not pretextual, arbitrary and capricious.[21] The decision might have been partially based on personal reasons, but it was also related to the merits of the decision regarding the placement of a landfill and related to a legitimate government objective. *Cf. Bello v. Walker,* 840 F.2d 1124 (3rd Cir.), *cert. denied,* 488 U.S. 851, 488 U.S. 868, 109 S.Ct. 134, 109 S.Ct 176, 102 L.Ed.2d 107, 102 L.Ed.2d 145 (1988).

The court finds that Langley's deprivation of substantive due process, if any, is not the result of an abuse of Monroe County's power sufficient to raise a possible ordinary tort to the stature of a constitutional violation. The court further finds that plaintiff's targeting substantive due process claim fails to state a ground upon which relief can be granted and must be dismissed.

### III. CONCLUSION

For the reasons stated above, the court hereby GRANTS defendants' motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted. Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court ORDERS this action be dismissed without prejudice as to Langley's public use claim, condemnation substantive due process claim, and excessive condemnation claim. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court ORDERS Langley's targeting substantive due process claim be dismissed with prejudice. In addition, the court DIRECTS its preceding orders be vacated.

SO ORDERED.

---

tional basis for the decision, if the decision was arbitrary, capricious and improperly motivated, then it violated plaintiff's rights. In essence, plaintiff argues that the standard should be interpreted with the disjunctive "or" rather than the conjunctive "and." The court disagrees.

**19.** If, for example, the County Commissioners had decided to target landowners of a particular color, or of a religious persuasion, the decision would be invalid as the decision would be arbitrary, capricious, improperly motivated and there would be no rational basis for such a selection.

**20.** Plaintiff did not allege that, in comparison, the site. selected (Langley's land) sits directly beside any house.

**21.** At oral argument, defendants declared that at the time the sites were selected, Langley was not the owner of record of the property at issue.